**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Provided to Walton CI
On 3-26-25 for Mailing
Date
By (officer initials) CL

MAR 31 2025 PM2:34
FILED - USDC - FLMD - TPA

**LEROY GRESHAM,**
Plaintiff,

Vs.

**CENTURION, et. al.**
Defendant(s)
_______________________/

Case No.: **8:23-cv-1704-MSS-CPT**
Division:
(Jury Trial Demanded)

---

**(AMENDED)**

**CIVIL RIGHTS COMPLAINT UNDER SECTION 1983**

---

Leroy Gresham, DC# 374016
Plaintiff, pro se
691 Institution Road
DeFuniak Springs, Florida 32433-2832

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Leroy Grasham
All other names by which you have been known: None
ID Number: 374016
Current Institution: Walton Correctional Institution
Address: 691 Institution Road
DeFuniak Springs, (City) FL (State) 32433 (Zip Code)

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name: Centurion
Job or Title *(if known)*: FLDOC Health Care Provider
Shield Number:
Employer: Itself
Address:
City / State / Zip Code

☐ Individual capacity ☑ Official capacity

Defendant No. 2

Name: Jane/John Doe ?
Job or Title *(if known)*: Director / Supervisor of/over Hardee C.I. Medical Dept.
Shield Number:
Employer: Centurion
Address: Hardee C.I.
Bowling Green (City) FL (State) 33834 (Zip Code)

☑ Individual capacity ☐ Official capacity

Defendant No. 3

Name

Job or Title *(if known)* Assistant Warden of/over Operations

Shield Number

Employer FLDOC

Address Hardee C.I.

Bowling Green FL 33834

*City* *State* *Zip Code*

☑ Individual capacity ☐ Official capacity

Defendant No. 4

Name

Job or Title *(if known)* Colonel of/over Security

Shield Number

Employer FLDOC

Address Hardee C.I.

Bowling Green FL 33834

*City* *State* *Zip Code*

☑ Individual capacity ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Eighth Amendment

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Continuation

**I. The Parties to This Complaint**

**B. The Defendants**

Defendant No. 5
APRN N. Wilson
Job or Title: APRN
Employer: Centurion
Address: Hardee C.I., Bowling Green, FL 33834

Defendant No. 6
N.Mejias
Job or Title: RN
Employer: Centurion
Address: Hardee C.I., Bowling Green, FL 33834

Note: Director/Supervisor of Hardee C.I. Medical Dept., Asst Warder-Operations, and Colonel of Security are being listed as Jane/John Doe due to Plaintiff not knowing of if either was/were a male or female.

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

"Each above named defendant" displayed deliberate indifference to Plaintiff's serious medical need when all knowingly and/or intentionally failed to perform their job requirements during the time as specified by a doctor and/or doctors. Therefore, in turn, caused Plaintiff extensive prolonged pain and suffering as well as permenant damaged to Plaintiff's eye sight.

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

C. What date and approximate time did the events giving rise to your claim(s) occur?

August 1,2019, while going to early morning breakfast I was stabbed several times by another inmate. One of the areas of the stab wounds was underneath Plaintiff's left eye.

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

On August 1,2019, Plaintiff was stabbed several times by another inmate, then had to be transported to Wauchula Hospital. From there Plaintiff was then sent to Tampa General Hospital due to the seriousness of one of his stab wounds under Plaintiff's left eye. While at Tampa General Hospital several medical procedure occurred, and, one of the doctors who also treated Plaintiff concerning his injuries was named Bahar Abbassi who's a Plastic Surgeon. On same date (8/1/2019) Doctor Abbassi clearly decided that the type of damage that Plaintiff had sustained under his left eye was so serious that surgery was required. A/The

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Permanent damage to Plaintiff's left eye that has left Plaintiff unable to see clearly out of that eye, inwhich has continued to worsen even though seeing glasses have been prescribed. And, complete numbness has constantly occurred from time to time to the area underneath Plaintiff's left eye.

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Allow Plaintiff to proceed further; trial by jury; permenent treatment to left and/ or both eyes, punitive and copensatory damages.

Continuation

**IV. Statement of Claim**

D. specific date of "August 15, 2019", was clearly set/established by Doctor Abbassi for Plaintiff to return then see Surgeon Michael Harrington whom would perform the surgery required to prevent long term and permanent future damage. **(See Exhibit A)** Doctor Abbassi further informed Hardee C.I. Administration and their Medical Staff that an extensive stay at Tampa General Hospital (TGH) was warranted and/or needed and that two midnight stay "was not enough." Yet on August 2, 2019, Plaintiff was still transported back to Hardee C.I. Hardee C.I. Administration and its medical staff both knowingly ignored Doctor Abbassi's expertise decision. **(See Exhibit B)**

Once Plaintiff had arrived back at the institution he was taken to the infirmary for a couple of hours only then given notice that Plaintiff was going to be put into confinement. Plaintiff did not even remain overnight. Once August 15, 2019 arrived, Plaintiff did not go back to TGH for his crucially scheduled appointment due to Hardee C.I. Assistant Warden of Operations and Colonel/Chief of Security knowingly and intentionally not caring about the seriousness of Plaintiff's scheduled surgeon appointment and surgery. Additionally, both did not want to use the man power, i.e., officers to transport Plaintiff back to Pampa General Hospital to accommodate Plaintiff's serious medical injury over "their personal priority" of having their Officer at the institution at instead of transporting Plaintiff to the hospital and having to remain there probably for several days.

**COUNT ONE**

Assistant Warden of Operations is/was to ensure that all and/or every area department of institution is/are up to date and properly functioning and being correctly managed including but not limited to issues and/or inmates that have been or going to later be transported to an outside hospital. In this case as others, the Assistant Warden of Operations knowingly and/or intentionally failed to do what was required conserving Plaintiff's serious medical injury.

**COUNT TWO**

The Colonel is/was over security of the institution and was directly responsible for ensuring that there specifically were officers either assigned to or in place who were going to transport Plaintiff back to TGH on August 15, 2019. Yet the Colonel knowingly and/or intentionally did not have such in place therefore causing Plaintiff to miss a critical surgeon/medical appointment and surgical operation to repair specific internal injuries concerning and surrounding his left eye. Both knew of and had been informed of this specific August 15, 2019 date two weeks in advance but instead deliberately and intentionally chose to ignore it.

Even though Plaintiff was not specifically made aware of the exact date of when he was supposed to return to the hospital he had been informed by the doctor he would come back for surgery within two weeks. About two and a half weeks later, Plaintiff began to write to medical per Inmate Request inquiring about Plaintiff's appointment but he did not receive a response. Eventually, Plaintiff filled out a Sick Call Request form and submitted it medical and was seen by a nurse in confinement who then informed

Plaintiff about the appointment. She then looked into Plaintiff's medical file then stated that Plaintiff had missed his scheduled appointment but didn't understand why and would inform everyone of it. Weeks later Plaintiff was then transported to Reception and Medical Center at Lake Butler (RMC) and not back to Tampa General Hospital. Once Plaintiff arrived at RMC in late September 2019, he was seen by a Doctor Smith that it was too late to send him back to Tampa General Hospital due to the time for such having past and that it would be too dangerous. Plaintiff's eyesight worsened over time. Even though eyeglasses were prescribed Plaintiff's left eye visibility has worsened to the point of total blurred vision.

**COUNT THREE**

Hardee's Medical Director/Supervisor was clearly made aware of and knew that Plaintiff had a specific August 15, 2019 scheduled surgery appointment but intentionally didn't specifically inform and/remind the proper administrative officials of the appointment. This intentional act occurred for the purpose of saving Certurion money.

**COUNT FOUR**

Nurse Wishon was also directly made aware of the critical August 15, 2019 date yet intentionally ignored it where her name appears on each and every hospital and medical document "included the ones that informs medical of the Augus15, 2019 scheduled appointment date.

**COUNT FIVE**

Nurse Mejias was also directly made aware of and specifically knew of/about the August 15, 2019 appointment dated yet intentionally chose to ignore it also where her name directly is signed under Nurse Wishon's signature on Plaintiff's medical records which notes an appointment to see Surgeon Michael Harrington on August 15, 2019. **(See Exhibit C)**

**COUNT SIX**

Centurion took on an unofficial position to save as much money as possible by way of providing inadequate medical care for serious medical needs of Florida Department of Corrections inmates and would have its prison medical employees provide or render the smallest of medical treatment to incarcerated inmates. Corners were cut by Centurion and the three medical staff members that it employed at Hardee C.I. for the purpose of saving money at the expense of Plaintiff's serious medical injury and need.[1]

It is the policy and custom of Centurion to take necessary actions in order to provide health care at minimum costs at the expense of prisoners not receiving adequate and necessary health care. These actions include but are not limited to minimizing and rationalizing prisoners' medical concerns/complaints; providing substandard care to prisoners; providing non-prescription ibuprofen and non-aspirin as a treatment for most medical issues; ignoring recommendations and appointments scheduled for prisoners by outside health care providers; etc. This is evidenced by

[1] A nurse at Hardee C.I. informed Plaintiff that Centurion had two goals which were 1) To make as much money as possible by 2) spending as little money as possible.

Centurion being named in hundreds of lawsuits for alleged deliberate indifference to prisoners' health care needs. **(See Exhibit D)** Furthermore, it is Centurion's custom, policy, and practice that were instituted against the Plaintiff which resulted in the deliberate indifference where Plaintiff's serious medical needs were disregarded. Centurion's customs and practices caused medical personnel at Hardee C.I. to ignore and/or fail to follow the proper protocol to ensure that Plaintiff received the proper medical treatment and follow-up visit for corrective surgery as recommended by the physician at (TGH). This custom or policy deprived Plaintiff of the right to have corrective surgery thus causing permanent loss of vision as well as permanent disfigurement. Centurion is directly responsible for negligence and violating Plaintiff's 8th Amendment Right, which should have ensured that Plaintiff was transported back to (TGH) for corrective surgery and health care.

Plaintiff has demonstrated that Defendants knew when Plaintiff returned from Tampa General Hospital that a follow-up visit was necessary so that Plaintiff could receive orbital surgery. The physician consult notes stated that operative repair would be needed in two (2) weeks. Defendants failed to follow establish protocol for inmates returning from outside patient care who require follow-up care. No written notification or directive was given to the institution practitioner and/or institutional administrative officials to evaluate Plaintiff's medical folder and ensure Plaintiff's required presence at Tampa General Hospital for his surgery. There is no notification or directive issued to the Medical Director to approve the corrective surgery. Plaintiff's medical folder show that well after the two-week recommendation for the corrective surgery a directive was

written in Plaintiff's medical folder for follow-up care. Defendants' deliberate indifference to Plaintiff's medical needs has cause irreparable damage to Plaintiff's vision as well as permanent disfigurement in Plaintiff's facial appearance. Defendants had an obligation to ensure that Plaintiff's medical treatment was provided in the time specified by the physician at TGH as provided by the 8th Amendment of the U.S. Contitution.

**Note:** Plaintiff has listed Hardee C.I.'s Chief Health Officer B. Solorzano-Pallais as the Medial Director/Supervisor of/over the Medical Department but Plaintiff is not sure if Solorzano-Pallais is/was in charge or not. Other and/or additional Defendants may be added at later date once additional facts are discovered.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

- [x] Yes
- [ ] No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Hardee Correctional Institution

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

- [x] Yes
- [ ] No
- [ ] Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

- [x] Yes
- [ ] No
- [ ] Do not know

If yes, which claim(s)?

See E.

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

- [x] Yes
- [ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

- [x] Yes
- [ ] No

E. If you did file a grievance:

1. Where did you file the grievance?

Institutional and Tallahassee

2. What did you claim in your grievance?

Inadequate medical care, because of the failure to transport me back to the hospital "before" a specific date as specifically ordered/stated by the doctor for surgery purpose. Deliberate indifference

3. What was the result, if any?

Ignored (Denied)

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

All grievances concerning this critical issue were ignored(Denied)

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s)

   Defendant(s)

2. Court *(if federal court, name the district; if state court, name the county and State)*

3. Docket or index number

4. Name of Judge assigned to your case

5. Approximate date of filing lawsuit

6. Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition.

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s)

   Defendant(s)

2. Court *(if federal court, name the district; if state court, name the county and State)*

3. Docket or index number

4. Name of Judge assigned to your case

5. Approximate date of filing lawsuit

6. Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3/26/25

Signature of Plaintiff Leroy Grasham

Printed Name of Plaintiff Leroy Grasham

Prison Identification # 374016

Prison Address Walton C.I., 691 Institution Rd

DeFuniak | Florida | 32433
City | State | Zip Code

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

City | State | Zip Code

Telephone Number

E-mail Address

# EXHIBITS

# A

**Discharge Summaries (continued)**

**Discharge Summary by Robert Rotatori, MD at 8/2/2019 8:04 AM (continued)**

**Follow-up Information**

Michael Harrington, MD On 8/15/2019.
Specialty: Plastic Surgery
Why: f/u orbital floor fracture
Contact information:
2 Tampa General Circle, Suite G213
Tampa FL 33606-3603
813-259-0929

8/2/2019
8:04 AM

Signed by Robert Rotatori, MD on 8/2/2019 8:09 AM

**History & Physicals**

**H&P by Bahar Abbassi, MD at 8/1/2019 11:33 PM**

Author: Bahar Abbassi, MD
Filed: 8/1/2019 11:35 PM
Status: Cosign Needed
Cosign Required: Yes

Service: Plastic Surgery
Date of Service: 8/1/2019 11:33 PM
Editor: Bahar Abbassi, MD (Resident)

Author Type: Resident
Creation Time: 8/1/2019 11:33 PM

Reason for History and Physical: Inpatient Admission

Based on my medical assessment after consideration of this patient's risk factors including age, co-morbidities, presenting symptoms and acuity, I certify that Inpatient Admission is a medical necessity. I expect that this patient will remain in the hospital for greater than two midnights, inclusive of time in the ER, observation status or inpatient status, based upon the following:

- Patient Risk factors and necessary services include left orbital floor fracture

I certify that my determination is in accordance with my understanding of Medicare's requirements for reasonable and necessary inpatient services. See plan below.

PLEASE SEE CONSULT NOTE DATED 8/1/19 FOR FULL H&P DETAILS

Bahar Abbassi, MD
USF Plastic Surgery PGY-4
813-332-1905

N. Wishon, APRN
Hardee C.I.

Signed by Bahar Abbassi, MD on 8/1/2019 11:35 PM

Tampa General Hospital

EMERGENCY DEPARTMENT
1 Tampa General Cir
TAMPA FL 33606-3571
Consult Report

TGHP, Leroy
MRN: 100749490, DOB: 9/2/1977, Sex: M
Adm: 8/1/2019, D/C: 8/2/2019

## Consult Notes

**Consults by Bahar Abbassi, MD at 8/1/2019 11:35 PM**

Author: Bahar Abbassi, MD
Filed: 8/1/2019 11:39 PM
Status: Cosign Needed
Cosign Required: Yes

Service: Plastic Surgery
Date of Service: 8/1/2019 11:35 PM
Editor: Bahar Abbassi, MD (Resident)

Author Type: Resident
Creation Time: 8/1/2019 11:35 PM

Consult Orders
1. ED Consult to Plastic Surgery [198233289] ordered by Kelsey Marie Hundley, MD at 08/01/19 2212

**Consult-Plastic Surgery**
**August 1, 2019**
**Chief complaint: EYELID LAC AND ORBITAL FXR**

HPI: Pt, Leroy TGHP, 41 y.o. male transferred to our facility from advent health after altercation while incarcerated earlier this am. Another inmate created a knife and attempted to stab his eye. Denies double vision but endorses left eye pain

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Hypertension | |

no history of blood clots.
no history of resistant infections.

No past surgical history on file.
Family history: reviewed and otherwise non-contributory
Patient has no known allergies.
Social: no tobacco

PRNlidocaine, norflurane-pentafluoropropane

**Review of Systems:**
Positive for: left eye pain
Remaining complete 10 point review of systems is negative per the patient.

**Physical Exam**

| Con | Recent Vitals | | | |
|---|---|---|---|---|
| | | 08/01/19 1918 | 08/01/19 2101 | 08/01/19 2323 |
| | BP: | 126/78 | 127/77 | 125/72 |
| | Pulse: | 71 | 74 | 72 |
| | Resp: | | 16 | 16 |
| | Temp: | 99.6 °F (37.6 °C) | 99.1 °F (37.3 °C) | |
| | SpO2: | 100% | 100% | 100% |
| Psych | communicates appropriately, appropriate affect | | | |
| Eyes | Clear/quiet conjunctiva, extraocular movements intact and equal subconj hemorrhage left globe, no exaggerated pain on upward gaze, periorbital edema left eye, 3cm stellate laceration lower lid | | | |

N. Wishon, APRN
Hardee C.I.

# EXHIBITS

# B

Tampa General Hospital

EMERGENCY DEPARTMENT
1 Tampa General Cir
TAMPA FL 33606-3571
Consult Report

TGHP, Leroy
MRN: 100749490, DOB: 9/2/1977, Sex: M
Adm: 8/1/2019, D/C: 8/2/2019

Consult Notes (continued)

**Consults by Christopher Michael Barron, MD at 8/1/2019 9:28 PM (continued)**

Chris Barron, MD
USF Ophthalmology, PGY-3

Signed by Michael Drucker MD on 8/2/2019 7:46 AM

Progress Notes

**Progress Notes by Bahar Abbassi, MD at 8/2/2019 8:11 AM**

Author: Bahar Abbassi, MD
Filed: 8/2/2019 8:11 AM
Status: Signed
Service: Plastic Surgery
Date of Service: 8/2/2019 8:11 AM
Editor: Bahar Abbassi, MD (Resident)
Author Type: Resident
Creation Time: 8/2/2019 8:11 AM

PLASTIC SURGERY PROGRESS NOTE

Decision made to proceed with operative repair in 2 weeks once edema has settled. Will schedule. Stable for d/c

Bahar Abbassi, MD
USF Plastic Surgery PGY-4
813-332-1905

Signed by Bahar Abbassi, MD on 8/2/2019 8:11 AM

**Progress Notes by Kayla Corbett, RN at 8/2/2019 8:00 AM**

Author: Kayla Corbett, RN
Filed: 8/2/2019 8:01 AM
Status: Signed
Service: Nursing
Date of Service: 8/2/2019 8:00 AM
Editor: Kayla Corbett, RN (Registered Nurse)
Author Type: Registered Nurse
Creation Time: 8/2/2019 8:00 AM

Assumed care of patient. Plastics at bedside, plan on discharge this morning. Pt denies pain or discomfort, police at bedside. Will continue to monitor by hourly rounding

Signed by Kayla Corbett, RN on 8/2/2019 8:01 AM

N. Wishom, APRN
Hardee C.I.

Imaging - All Results

**LOAD TRANSFERRED PATIENT FILMS CT [198233288]**
Resulted: 08/01/19 2121, Result status: In process

Ordering provider: Enola Okonkwo, MD 08/01/19 2109
Accession number: E03031098
Performed: 08/01/19 2121 - 08/01/19 2131

Lab - All Results

**FOCUS HIV ANTIGEN ANTIBODY COMBO (ED USE ONLY) [198233273]**
Resulted: 08/01/19 2108, Result status: Final result

Ordering provider: Kelsey Marie Hundley, MD 08/01/19 2009
Resulting lab: TGH (SUNQUEST)
Narrative:
Test performed by
Tampa General Hospital Clinical Laboratory
1 Tampa General Circle

# EXHIBITS

# C

Exhibit C

FLORIDA DEPARTMENT OF CORRECTIONS

# Chronological Record of Health Care

**Allergies:** NKDA

| DATE/TIME | |
|---|---|
| 08/01/19 1304 | T/C Rep Reception Tampa Fidl. ance. Ch... Fidl. ance. |
| | Nmejias RN Hardee CI N.mejias 8/1/19 1600 |
| | R. Solorzano-Pallais, MD Chief Health Officer Hardee C.I. |
| 8-1-19 1730 | Nurse to report Nurse, report received from Advent Health Wauchula. I/M being transferred to TGH due to stabbing penetration, eye socket. |
| | O. Coronado, LPN Hardee C.I. |
| | Inc - Note: |
| 8-2-19 1100 | Pharmacy tech from Tampa GH. call to up date on HBP med I/m use information given Pharmacy tech inform that the I/m is pending in Doctor evaluation I/m stable. Will do the nurse to call. Tried to call 3 times no answer |
| | J. Garcia Hernandez, RN Hardee C.I. |
| 8/3/19 1345 | I/m received from Tampa General Hospital with (L) under eye sutures, alert and oriented. B/P - 137/81 Temp - 98.8 SPO2 98% weight - 158 lbs pulse - 70 bpm Resp - 16. I/m received c̄ Rx of Erythromycin ophthalmic ointment and hydrocodone - acetaminophen PO. I/m received ā follow-up appt. on 08/15/19 c̄ MD Michael Harrington Referred to PОD — Nmejias RN N. Mejias Hardee CI |

GRESHAM, LEROY
DC# 374016
DOB 09/02/77
BM
HARDEE CI

Inmate N
DC#____
DOB:____

Institution HARDEE C. I.

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

FLORIDA DEPARTMENT OF CORRECTIONS

# Chronological Record of Health Care

Allergies:

| DATE/TIME | |
|---|---|
| 8/2/19 1500 | S- Pt seen for outside hospital return. Pt was seen & treated at AdventHealth Wauchula & then transferred to Tampa General Hospital s/p acute trauma/injury to left orbit & Left eye. CT from AdventHealth revealed a comminuted fracture involving inferolateral aspect of left orbit w/ fx fragments extending to level of skin. There is also a displaced fx. involving (L) orbital floor w/ extraconal fat extending into (L) maxillary antrum (see complete report findings). Pt Rx'd e-mycin opthalmic ointment & pain med. Pt referred to reconstructive surgeon next 2 wks by TGH physician. |
| S. [illegible], RN Hardee C.I. 8/2/19 | |
| 8/2/19 | S- Pt reports as stable. Pain on left face & under (L) eye is 7/8 out of 10. Denies any dizziness, changes in vision in (R) eye, N/V, syncope, chest pain, S.O.B., palpitations, intense headaches. A+Ox3, O- s.a.d. Stable. Hydrated. Head: (L) peri-orbital & maxillary swelling. 1-1½ healing laceration (L) face; well-approximated. (L) eye swollen shut. (L) conjunctiva largely injected & irritated. (R) eye pupil round & reacts to light. Neck supple; ̄s JVD. Heart RRR. Lungs CTA. Abd. soft, non-tender, (+) B.S. x4 Quad. |
| | A- S/P Acute Trauma face (L) Orbital Floor Fracture |
| | P/E + P.O.C. / Tmt. discussed. (cont next page DC4-701) |

Inmate Name Gresham, Leroy Race/Sex B/M
DC# 374016
Date of Birth 09/02/77
Institution Hardee CI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

FLORIDA DEPARTMENT OF CORRECTIONS

# Chronological Record of Health Care

Allergies:

| DATE/TIME | |
|---|---|
| | (continued from previous page) |
| 8/2/19 1530 | P/E Cont - Will Rx pain med & antibiotic ointment as recommended. Will refer to reconstructive surgeon as recommended. Will admit to infirmary 23° observation, including neuro checks & V.S. Pt to F/U w/ [illegible] CW POD 3-5 days, or PRN per protocol. |
| | N. Wishon, APRN Hardee C.I. |
| 8-2-19 | 1835 - Twinrix vaccine given R-hip; Keflex 500mg po given; Erythromycin opthalmic ointment to OS given. [signature] Hardee CI |
| 8.16.19 1300 | INC note: I/m to sick call for copy of [illegible]. Copy provided. [signature] Hardee CI |

Inmate Name Gresham, Leroy
DC# 374016 Race/Sex BM
DOB: 9/12/77
Institution: HCI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

# EXHIBITS

# D

Moore pleaded for them to stop, but the beating continued and Santiago asked him, "Who's the monster now?" Moore suffered multiple fractures to the cheekbones and right eye socket, five fractured ribs, and a collapsed lung. He spent two weeks in hospitals.

Scott, Santiago and other guards tried to cover up the assault, They had Cosman lift his shirt and hit him several times with a baton so Scott could photograph the bruises as evidence that Moore initiated the violence. Morris rubbed the injury to make it look worse. Scott told Santiago, Morris, and Cosman to fill out false initial use-of-force documentation depicting Moore as the aggressor. They repeated the false story in subsequent use-of-force reports. Scott also filed a false injury report stating only she, Santiago, Cosman and Morris were witnesses to the assault.

Scott and Santiago were charged with depriving Moore of his civil rights and conspiracy to do so and falsifying of records and conspiracy to do so in violation of 18 U.S.C. §§ 2, 241, 242, 371 and 1519. Following a two-week jury charge, they were convicted on all four counts. Aided by White Plains attorney Richard D. Willstatter of Green & Willstatter and Scarsdale attorney Daniel A. Hochheiser, they appealed.

The Second Circuit upheld their convictions, most notable ruling that a conspiracy does not require a set amount of time or actual discussion among the conspirators so long as surrounding facts and circumstances support the existence of an agreement and a conviction for falsifying records does not require knowledge of an impending federal investigation. See: *United States v. Scott*, Case Nos. 18-2836, 18-2882, (2d Cir. 2020).

# Centurion Opts Out of Mississippi Prison Medical Contract

*by David M. Reutter*

Citing Mississippi's refusal to invest in prison facilities and staff, private medical vendor Centurion pulled out of its contract with the Mississippi Department of Corrections (MDOC) to provide medical and mental health care to prisoners. The move was hailed as a "significant victory" by Team Roc.

As *PLN* has reported, rappers Jay-Z and Yo Gotti created Team Roc, which is team of attorneys, to represent 227 prisoners held at the Mississippi State Prison at Parchman to sue MDOC and Centurion in the wake of seven prisoner deaths over 50 days. The deaths occurred after riots in January 2020 at Parchman and other prisons throughout the state. (See *PLN*, July 2020, p.1.)

In a July 7, 2020, letter to MDOC Commissioner Burl Cain, Centurion said, "We do not believe we can further improve the effectiveness of our level of care without additional investment from [MDOC] in correctional staffing and infrastructure along the lines of what we have already recommended." The withdrawal of services became effective on October 5, 2020.

Team Roc attorney Marcy Croft said she hopes the letter gets the attention of Gov. Tate Reeves. "It's time to invest in the health and well-being of the people in your prisons," Croft said. "We will not stop until the incarcerated receive consistent and competent medical care, especially now with the COVID-19 crisis. This must be a priority."

Centurion abandoned a contract that paid it $268 million since 2015. In fiscal year 2019, MDOC paid Centurion more than $52 million. Politicians may also suffer a loss to their coffers, as Centurion has been a huge contributor. Since 2010, Centene, the parent company of Centurion, its political action committee, and employees have given $215,000 to Reeves' campaign. Between 2018 and 2020, the company also contributed $35,000 to state House Speaker Philip Gunn and $10,000 to Lt. Gov. Delbert Hosemann Jr.

It seems ironic that a for-profit company that has been named in hundreds of lawsuits for alleged deliberate indifference to prisoners' health care needs would drop a contract. The bottom line, however, appears to be at the forefront for such companies, and that Centurion decided to abandon such a huge contract points to dismal prospects for Mississippi prisoners.

Dr. Marc Stern was hired by Team Roc. He is an expert in prison health care and has evaluated dozens of prisons throughout the nation. He witnessed exposed wiring, some of it near standing water, at Parchman. "The conditions under which residents exist in Parchman are subhuman and deplorable in a civilized society," Stern was quoted as saying.

Prison health care is now being provided by VitalCore Health Strategies, *Clarion Ledger* reported in January 2021.

Sources: *clarionledger.com*, *thesource.com*, *cbsnews.com*

**EXECUTIVE CLEMENCY**
**STATE AND FEDERAL**
*For Info on Sentence Reduction through Executive Clemency:*
**NATIONAL CLEMENCY PROJECT, INC.**
3324 W. University Avenue, #237
Gainesville, FL 32607
954-271-2304
www.nationalclemencyprojectinc.com
nationalclemencyprojectinc@gmail.com
*(35 Years of Clemency & Parole Assistance)*

Ink From The Pen
Artist behind the walls?
Inspired by prison art?
Roll with the big dogs!
Check out *Ink from the Pen*!
1440 Beaumont Ave. · Ste. A2-266 · Beaumont, CA 92223
760.616.0557 | www.InkFromThePen.com
*Magazines are allowed in most State and Federal Prisons*

Leroy Gresham, DC# 374016
Walton Correctional Institution
691 Institution Rd.
DeFuniak Springs, FL 32433
LEGAL MAIL

Mailed From A
Correctional
Institution

FIRST-CLASS
US POSTAGE PITNEY BOWES
ZIP 32433
02 7H
0006070546
$ 004.31⁰
MAR 26 2025

Screened by
USMS

Clerk of Court
U.S. Middle District
Tampa Division
801 N. Florida Ave
Tampa, FL 38602-3800

Provided to Walton CI
On 3-26-25 for Mailing
Date
By (officer initials) [illegible]