115634-7

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO. 8:23-cv-1704-MSS-CPT**

LREOY GRESHAM,

Plaintiff,

v.

CENTURION, *et al.*,

Defendants.
_____________________________________/

**DEFENDANTS' JOINT MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW**

Defendants, Nicole Wishon, Noemilie Mejias, and Centurion of Florida, Inc. ("Centurion"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby file this Joint Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 27] for failure to state a cause of action, as Plaintiff's claims against Centurion once again fail to allege any specific policy or procedure violative of any Constitution right, and Plaintiff's Amended Complaint does state any conduct rising to the level of a deliberate indifference to medical needs. Likewise, Plaintiff's claims against Nurse Wishon and Nurse Mejias (and the new allegations and exhibits attached against them) utterly fail to allege any action taken by them violative of any Constitutional right, fail to state a viable cause of action, and fail to allege any conduct sufficient to establish deliberate indifference to a serious medical need. Defendants further state as follows:

## BACKGROUND[1]

This matter general arises from Plaintiff's claims regarding the quality and timeliness of medical treatment he admittedly received during his incarceration at the Hardee Correctional Institution ("Hardee"). (*See generally* Am. Compl.). Plaintiff, Leroy Gresham, is a *pro se* inmate incarcerated by the FDOC, and loosely claims Defendants violated his 8th and 14th Amendment rights.

According to Plaintiff, on August 1, 2019, he was stabbed "several times" by another, unnamed inmate. (*See id.* p. 6). Plaintiff states he had a stab wound "underneath Plaintiff's left eye." (*Id.*). That same day, and following transportation to Wauchula Hospital, Plaintiff was transported to Tampa General Hospital, where he received treatment from a Doctor Bahar Abbassi (a plastic surgeon). (*See id.* p. 6).

On August 2, 2019, Dr. Abbassi discharged Plaintiff from the hospital after making the decision "to proceed with operative repair in 2 weeks once edema has settled."[2] (Am. Compl. Ex. B, p. 1). Notably, Dr. Abbassi's progress note states Plaintiff was "stable" for discharge. (*Id.*). RN Corbett also noted Plaintiff denied "pain or discomfort" on the morning of August 2, 2019, just before his discharge. (*Id.*). Plaintiff's Discharge Summary notes Plaintiff should follow-up with "Michael Harrington, MD On 8/15/2019" to follow up on an "orbital floor fracture." (*Id.*).

Plaintiff provide a portion of the his FDOC Chronological Record of Health Care, which notes Plaintiff was seen by several medical professionals (including these Defendants) upon his

---

[1] The allegations in the Amended Complaint are given the presumption of truth solely for the purposes of resolving the present Motion, as required by the Federal Rules of Civil Procedure. Otherwise, Defendants do not agree with the facts as presented by Plaintiff's Amended Complaint.

[2] It is worth noting Plaintiff has once again clearly and obviously cherry-picked portions of the Tampa General Hospital records to include in this pleading, as he has provided only a handful of the nineteen (19) pages that were sent via "Fax Server," according to the page numberings and fax header.

return from the hospital on August 2, 2019. (*See* Am. Compl. Ex. C). In fact, RN Mejias saw Plaintiff at 1:25 PM on August 2, 2019, and the notes indicate she physically examined him, took his blood pressure and temperature, entered his prescriptions and follow-up appointment with Dr. Harrington, and made a referral. (*See id.*). The very next entry, apparently by APRN Wishon, notes Plaintiff's orbital fracture and "referral to reconstructive surgeon next 2 weeks by TGH physician." (*Id.*). The note ends by stating she "will refer to reconstructive surgeon as recommended [and] will admit to infirmary" for observation, and have Plaintiff follow-up in 3–5 days. (*Id.*). It is further noted Plaintiff's prescriptions were provided to him at 6:35 PM on August 2, 2019. (*See id.*).

Notwithstanding the foregoing, according to Plaintiff, he did not go back to Tampa General Hospital on August 15, 2019 for his follow-up appointment. (*See* Am. Compl. "Statement of Claim" p. 6). Plaintiff expressly claims the Assistant Warden and the Colonel at Hardee (i.e., none of these Defendants) were to blame for this failure to transport him. (*See id.*). He then claims the Assistant Warden and Colonel were also to blame because they had knowledge of the surgical appointment, but they did not want to accommodate Plaintiff's serious medical injury. (*See id.*).

In Count Four against Nurse Wishon, Plaintiff baldly claims "Nurse Wishon was also directly made aware of the critical August 15, 2019 date yet intentionally ignored it where her name appears on each and every hospital and medical document 'included the ones that informs medical of the August15 [sic], 2019 scheduled appointment date." (*Id.* p. 8). Count Five against Nurse Mejias claims she was "made aware of and specifically knew of/about the August 15, 2019 appointment dated [sic] yet intentionally chose to ignore it also where her name directly is signed under Nurse Wishon's signature on Plaintiff's medical records which notes an appointment to see Surgeon Michael Harrington . . . ." (*Id.* p. 9).

However, and as noted above, the exhibits attached to the Amended Complaint make clear the referral to see Dr. Harrington was noted and made by these two Defendants. And Plaintiff has not (and cannot) make any allegations that either of these two nurses had any ability to transport Plaintiff out of a state prison to see Dr. Harrington. In short, Plaintiff still does not provide any explanation for how or why these Defendants would purposefully ignore his appointment, or what power they had to get Plaintiff out of Hardee and to Tampa General Hospital.

In Count Six against Centurion, Plaintiff baldly claims "corners were cut" by Centurion's staff "for the purpose of saving money". Plaintiff fails to provide any actual custom or policy of Centurion at issue, vaguely claiming Centurion's (unspecified) "customs and practices caused medical personnel at Hardee CI to ignore and/or fail to follow the proper protocol to ensure that Plaintiff received the proper medical treatment . . . ." (*Id.* p. 10). This is particularly ironic, as Plaintiff does not (and cannot) explain how having an outside provider perform a procedure would somehow cost Centurion (as opposed to the State) any additional expense. At most, he once again claims Centurion has the fairly common "goal" of maximizing profits and minimizing expenses. (*See id.* p. 10).

Notwithstanding the extensive treatment received and documentation in the record by these individual Defendants of the follow-up visit, and complete lack of any factual allegation that they were in any way involved in preventing Plaintiff from making his scheduled appointment, Plaintiff now brings the Complaint against Centurion pursuant to 42 U.S.C. Section 1983, claiming deliberate indifference to his medical needs, and a similar 42 U.S.C. Section 1983 claim against Nurse Wishon and Nurse Mejias. (*See generally id.*). But critically, Plaintiff still does not allege any specific policy or procedure of Centurion was violative of any right owed to Plaintiff. (*See generally id.*). Nor does the Amended Complaint allege conduct by Centurion of either nurse rising to the level of a deliberate indifference to medical needs by any of these Defendants. (*See*

*generally id.*). To the contrary, the Amended Complaint suggests Plaintiff received medical treatment multiple times, had a follow-up visit scheduled, and these nurse Defendants documented the referral in Plaintiff's medical records. (*See generally id.*). Consequently, Plaintiff's Amended Complaint is legally insufficient, Defendants' Motion should be granted, and they should be dismissed with prejudice.

## MEMORANDUM OF LAW

Courts must liberally construe all pleadings submitted by a *pro se* litigant. *See Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). Notwithstanding such leniency, courts cannot rewrite a deficient pleading for the sake of sustaining an action. *Id.* (quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1369 (11th Cir. 1998)). When determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations" while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556

U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Plaintiff has not stated a plausible cause of action against any of these Defendants.

**B. Argument**

*1. Plaintiff's Amended Complaint fails to state a claim for relief against Centurion, as Plaintiff fails to allege any specific Centurion policy, custom, or practice was the moving force behind any violation of his constitutional rights.*

Plaintiff still fails to plead deliberate indifference against Centurion. "Where a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of Section 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed, "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997). Critically, "liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). *See also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *Denham v. Corizon Health, Inc.*, Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at *3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the government for which it works.") (citation omitted), *aff'd* (11th Cir. Jan. 13, 2017).

Where a deliberate indifference medical claim is brought against an entity, such as Centurion, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under Section 1983 cannot be based on the theory of respondeat superior. *See Craig*, 643 F.3d at 1310 (quoting *Grech*, 335 F.3d at 1329); *see also Denno v. Sch. Bd. Of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, such an entity may be liable in a Section 1983 action "only where the [government entity] itself causes the constitutional violation at issue." *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978).

In *Monell*, the United States Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. But, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Under *Monell*, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno*, 218 F.3d at 1276 (citations omitted); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating *Monell* "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).

The policy requirement is meant to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" *Grech*, 335 F.3d at 1329 n.5 (quotation and citation omitted). Thus, governmental liability only arises under Section 1983 where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483–84). Not surprisingly, a government entity (or a private company acting in a traditionally governmental capacity) seldom has an official policy permitting a particular constitutional violation, so in order to state a cause of action for damages under Section 1983, most plaintiffs must demonstrate that the entity has a custom or practice of permitting the violation. *See Grech*, 335 F.3d at 1330; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has further defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*, 117 F.3d at 489. Additionally, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Here, any liability attaching to Centurion under Section 1983 must be based on its functional equivalence to the government entity responsible for providing medical care and services to inmates, and thus Plaintiff must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged constitutional violations. However, Plaintiff's Amended Complaint (like the prior pleading) only makes cursory claims as to any such policy of

Centurion, much less how it worked to deprive Plaintiff of any right contracted with the FDOC to provide healthcare within the prison system. (*See generally* Am. Compl.). Plaintiff fails to allege any facts showing Centurion itself violated his federal constitutional rights or caused a violation of his constitutional rights. Plaintiff has asserted no facts showing that a policy, custom, or practice of Centurion was the moving force behind any violation of his constitutional rights. In fact, Plaintiff has not even alleged the existence of any actual policy, custom, or practice of Centurion (just a general, "increase profits, decrease costs" maxim that is true of most businesses). At most, Plaintiff provides conclusory statements, while simultaneously acknowledging he actually received medical treatment, prescriptions, and pain management for his ailment (which, over the course of his imprisonment and coupled with this litigation, easily exceed the cost of any missed procedure). (*See generally id.*). This is insufficient to state a claim against Centurion, and Centurion should be dismissed with prejudice.[3]

*2. Plaintiff's Amended Complaint fails to state a claim for relief against Nurse Wishon and Nurse Mejias, as Plaintiff has utterly failed to allege any facts against them of any violation of his constitutional rights.*

Plaintiff fails to plead an Eighth Amendment violation against Nurse Wishon and Nurse Mejias. To assert a prisoner Section 1983 claim, a complaint must contain allegations of deliberate indifference. A successful pleading on this theory requires allegations the inmate suffered an

[3] Although hardly worth noting, Plaintiff has included a short, one-page article as Exhibit D to his Amended Complaint, for the unsupported, hearsay statement that Centurion has been named in "hundreds of lawsuits for alleged deliberate indifference." Notably, an "allegation" of deliberate indifference is not the same as a "finding" of deliberate indifference, the article concerns prisons in Mississippi (not Florida), and there is no discussion of any policy or custom of Centurion. The article itself is utterly irrelevant and immaterial to any claim raised by Plaintiff. But, it is interesting to note the article appears to indicate Centurion made the decision to withdraw from its lucrative MDOC contract because Centurion did "not believe we can further improve the effectiveness of our level of care without additional investment from [MDOC] in correctional staffing and infrastructure along the lines of what we have already recommended." (*Id.*). Thus, the article actually cuts against Plaintiff's claims that Centurion values profits over patient care.

objectively serious medical need, and the defendant intentionally disregarded that need. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law). A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like a physician's diagnosis). As eloquently stated by Judge Moody,

> Not every claim of inadequate medical attention rises to the level of a constitutional violation. To show that a prison official acted with deliberate indifference to serious medical needs, a prisoner must establish three elements. First, he must satisfy the objective component by showing that he had a serious medical need. Second, he must satisfy the subjective component by showing that a prison official acted with deliberate indifference. Third, as with any tort claim, the prisoner must show that the injury was caused by the defendant's wrongful conduct.

*Clark v. Tucker*, No. 8:13-CV-2642-T-30, 2014 WL 68646, at *3 (M.D. Fla. Jan. 8, 2014) (citation omitted). To establish the subjective component, a prisoner must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *See Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). A delay in providing medical treatment can sustain a "deliberate indifference" claim, but only where the delay has exacerbated the prisoner's injury or unnecessarily prolonged the inmate's pain. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010). In this type of case, the nature of the medical need, the reason for the delay, and the effect of the delay on the prisoner's

medical condition are all relevant factors in determining whether the delay has reached constitutionally intolerable proportions. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Further, "should haves" are not a sufficient basis for a Constitutional claim. The Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). In *Estelle*, the court reinstated the District Court's dismissal of a prisoner's Section 1983 complaint for failure to state a claim. Recognizing the plaintiff's primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id.* at 107. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (*quoting Farmer*, 511 U.S. at 838); *see Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (explaining that "a simple difference in medical opinion" does not constitute deliberate indifference"); *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980) (treatment may violate the Eighth Amendment if it involves "something more than a medical judgment call, an accident, ***or an inadvertent failure***" (emphasis added)).

Here, Plaintiff's lack of factual, specific allegations of deliberate indifference warrants dismissal of his claims against Nurse Wishon and Nurse Mejias. The generalized allegations raised by this pleading do not meet the pleading requirement for a Section 1983 claim. According to the limited factual allegations involving his condition, Plaintiff received timely medical treatment from medical staff at Hardee, including Nurse Wishon and Nurse Mejias. There is no explanation for how or why his August 15, 2019 appointment was missed attributable to these Defendants. To

the contrary, Plaintiff's Amended Complaint expressly claims the Assistant Warden and the Colonel at Hardee (i.e., none of these Defendants) were to blame for this failure to transport him.

There is no allegation that either nurse actively participated in preventing Plaintiff from attending his appointment. Nearly as important, there is no allegation to show what either nurse could have possibly done anything to get him to his August 15, 2019 appointment. To the contrary, the allegations and documents show that once the medical staff at Hardee learned of this incident, received Plaintiff, and evaluated him upon his return from the hospital, they noted the prescriptions and surgical recommendation and made the appropriate referrals. This is not deliberate indifference.

As to these Defendants, there is no evidence of conduct that goes "beyond gross negligence" (or anywhere near that lofty standard). Nor is there any evidence of any specific facts by which Nurse Wishon or Nurse Mejias could have been aware of or inferred any potential deliberate indifference to Plaintiff. There is simply no explanation or factual averment whatsoever regarding how or why Plaintiff's alleged delay in receiving medical care for his eye occurred (only that he somehow, for some reason, missed his August 15, 2019 follow-up appointment), notwithstanding these Defendants referral to an outside surgeon. And clearly, neither nurse has any power or ability to force prison officials at Hardee to send Plaintiff out for a surgical referral.

Although prisons and prison officials have a duty to protect prisoners from foreseeable harms, "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There is simply insufficient allegations of any such a breach here by these Defendants. This is insufficient to state a claim against them, and they should be dismissed with prejudice. As such, even under the most generous reading of the factual assertions made in this Amended Complaint, the allegations do not meet the requirements to assert

Constitutional claims under Section 1983 against Nurse Wishon and Nurse Mejias. More is required. The Amended Complaint should be dismissed with prejudice.

## C. Conclusion

Based on the foregoing, Plaintiff has failed to bring a valid cause of action against these Defendants, failed to allege any facts violative of Plaintiff's constitutional rights, and failed to otherwise state a policy or custom that violated his Constitutional rights. Plaintiff's Amended Complaint should be dismissed prejudice.

April 21st 2025

Respectfully submitted,

*/s/ Carlos A. Garcia*
Carlos A. Garcia, Esquire (FBN 99768)
cagarcia@wickersmith.com
ftlcrtpleadings@wickersmith.com
WICKER SMITH O'HARA McCOY & FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on April 21st, 2025, and the foregoing document is being served this day on all counsel or parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing, in compliance with Federal Rule of Civil Procedure 5(b)(3). Please see below service list for Pro-Se Plaintiff.

*/s/ Carlos A. Garcia*
Carlos A. Garcia, Esquire

**SERVICE LIST**

***Via Certified Mail***
***Tracking # 9414 8149 0226 9393 6038 07***
Leroy Gresham – Legal Mail
Inmate# 374016
Walton Correctional Institution
691 Institution Rd
De Funiak Springs, FL 32433-1831